IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ORLANDO MACHUCA, | ) | CASE NO. 3:16 CV 2308 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| JASON BUNTING, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me[1] is the petition of Orlando Machuca for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Machuca was convicted by a Allen County Court of Common Pleas jury in 2014 of burglary and domestic violence and is serving a sentence of  9 ½ years.[3] He is currently incarcerated at the Marion Correctional Institution in Marion, Ohio.[4]

---

[1] This matter was referred to me under Local Rule 72.2 by United States District Judge Patricia A. Gaughan by non-document order dated October 5, 2016.

[2] ECF # 1.

[3] *Id.*

[4] http://www.drc.state.oh.us/OffenderSearch

In his petition, Machuca raises three grounds for habeas relief.[5]  The State has filed a return of the writ arguing that the petition presents non-cognizable claims that should be dismissed and otherwise lacks merit.[6]  Machuca has filed a traverse.[7]

For the reasons that follow, I will recommend Machuca's petition be denied in part and dismissed in part.

## Facts

### A.      Underlying facts, conviction, and sentence

The facts that follow come from the decision of the appeals court.[8]

In April 2014, Machuca was indicted by an Allen County Grand Jury of one count of burglary, one count of domestic violence, and one count of failure to comply.[9]  The indictment further alleged that Machuca had two prior convictions for domestic violence.[10]

A jury trial commenced in October 2014.[11]  The victim, Tracie testified that she moved from Lima, Ohio to Miami, Oklahoma, with the hope of starting a new, drug free

---

[5] ECF # 1 at 16.

[6] ECF # 10.

[7] ECF # 13.

[8]  Facts found by the state appellate court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)).

[9] ECF # 10, Attachment 1 at 123.

[10] *Id*. at 124.

[11] *Id*. at 127.

life.[12] She met Machuca while employed at a factory in Joplin, Missouri,  after a few months, they married.[13]

Upon their marriage, Tracie stated that Machuca became physically abusive.[14]  In early 2013, she moved out of the marital home after Machuca threw a phone at her head, splitting it open.[15]

Tracie began to take alternative routes to and from work in order to avoid contact with Machuca.[16]  But, in June 2013, Tracie spotted Machuca's vehicle as she was getting of the highway.[17] In attempt to avoid him, she quickly made an illegal U-turn and got back on the highway.[18] She stated that she thought he was gone, until he hit the side of her car three times.[19] Tracie lost control of the vehicle when he hit her the third time.[20]

Tracie testified that after she lost control of her car, Machuca got out of his car and came after her, threatening to kill anyone who came to her aid.[21]  She ran across the turnpike

---

[12] *Id*.

[13] *Id*. at 128.

[14] *Id*.

[15] *Id*.

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

and climbed over the center concrete barrier to safety.[22] Machuca fled the seen when on-lookers called 911, eventually he was arrested and charged with assault.[23]

Following Machuca's release on bond, Tracie moved to her mother's home in Ottawa, Ohio.[24]  In an effort to elude Machuca, Tracie altered the GPS on her phone so that it appeared to be originating from Hawaii, where her sister lived.[25]

Tracie stated that she realized Machuca had followed her to Ohio when he came to her new job, snuck past security, and began looking for her.[26]  Machuca was escorted off the premises by security and police informed hin not to re-enter.[27]  But, when Tracie left work later that day, Machuca was waiting outside the exterior gate.[28]  He tried to get into her car, breaking the door handle in the process.[29]

Tracie testified that later that month she was driving home when she got stopped by a red light.[30]  As she waited, her driver's side door was suddenly pulled open by Machuca.[31]

---

[22] *Id.*

[23] *Id.*

[24] *Id.* at 129.

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

Tracie stated that he punched her face, pulled her out of the car, and began dragging her across the pavement.[32]  After some time, an elderly woman came to her aid and Machuca stopped.[33]  He was convicted of domestic violence in Lima Municipal Court and extradited back to Missouri to face charges related to the highway incident.[34] According to Tracie, she thought that Machuca was "locked up."[35]

Thereafter, Tracie testified that she moved in with a life-long friend, Michael Hurley.[36] On February 26, 2014, she stated that she was cooking dinner when suddenly someone grabbed her by the throat.[37]  At first, she thought someone was playing a joke, until she saw Machuca.[38]  A fight ensued and she began to yell for help.[39]  Machuca began dragging Tracie through the residence towards the door in an attempt to get her in the car with him.[40]  The commotion alerted Hurley's son, who threatened to call 911 causing Machuca to flee.[41]

---

[32] *Id*.

[33] *Id.* at 130.

[34] *Id*.

[35] *Id*.

[36] *Id*.

[37] *Id*.

[38] *Id*.

[39] *Id*.

[40] *Id*.

[41] *Id*.

Police were called, but before they arrived, Machuca came back and began beating on the windows, threatening Tracie.[42]  Machuca fled again, but was later arrested.[43]

Machuca testified that he never harmed Tracie.[44]  He admitted going to her home on February 16, 2014, but denied entering the home or harming her.[45]  He maintained that his past and present actions stemmed from his desire to help Tracie overcome her drug addiction.[46]

The jury found Machuca guilty of burglary and domestic violence[47] and he was sentenced to nine years and six months in prison.[48]

---

[42] *Id.*

[43] *Id*.

[44] *Id*.

[45] *Id*. at 131.

[46] *Id.*

[47] The State dismissed Count three of the indictment.

[48] *Id.*

**B.      Direct Appeal**

*1.      Ohio Court of Appeals*

Machuca, through counsel, filed a timely[49] notice of appeal[50] with the Ohio Court of

Appeals. In his brief, Machuca filed three assignments of error:

1.      The defendant was denied his right to a speedy trial as a result of
        actions taken by trial counsel.

2.      The trial court erred in admitting other acts evidence relating to prior
        domestic violence incidents.

3.      The trial court erred in not appointing substitute counsel to the
        defendant.[51]

The state filed a brief in response.[52] The Ohio appeals court overruled all three

assignments of error and affirmed the decision of the trial court.[53]

---

[49]   Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal
within 30 days of the judgment being appealed. *See*, *Smith v. Konteh*, No. 3:04CV7456, 2007
WL 171978, at *2 (N.D. Ohio Jan. 18, 2007) (unreported case). Machuca's conviction and
sentence were journalized on December 8, 2014 (*id.* at 40) and the notice of appeal was filed
on January 5, 2015. *Id.* at 45.

[50]   *Id.*

[51]   *Id*. at 54.

[52]   *Id*. at 82.

[53]   *Id*. at 122.

## 2.    *The Supreme Court of Ohio*

Machuca, *pro se*, thereupon filed a timely[54] notice of appeal with the Ohio Supreme

Court.[55] In his brief in support of jurisdiction, he raised three propositions of law:

1.    The trial court erred in denying defendant-appellant a fast and speedy
trial in violation of Ohio and United States Constitution.

2.    The trial court denied defendant-appellants [sic] right to a fair trial and
due process of law by admitting evidence of prior bad acts which was
improper under Evid.R.404 (B) and prejudicial under Evid.R. 403(B).

3.    Defendant-appellant's right to attorney-client privilege was violated
requiring appointment of new counsel.[56]

The record does not reflect that the State filed a memorandum in response to

jurisdiction.  On May 18, 2016, the Ohio Supreme Court declined to accept jurisdiction under

S.Ct.Prac.R. 7.08 (B)(4).[57]

---

[54] *See* Ohio S.Ct.Prac.R. 7.01(A)(5)(b) (To be timely, a notice of appeal must be filed
within 45 days of entry of the appellate judgment for which review is sought.); *See*,
*Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010) (discussing forty-five day
limit) (unreported case). The court of appeals affirmed the decision of the trial court on
January 25, 2016.  *Id.* Machuca filed his notice of appeal with the Supreme Court of Ohio
on February 19, 2016. *Id.* at 141.

[55] *Id.*

[56] *Id.* at 143.

[57] *Id.* at. 175.

-8-

**C.     Petition for writ of habeas corpus**

On September 16, 2016, Machuca, *pro se*, timely filed[58] a federal petition for habeas relief.[59] As noted above, he raises three grounds for relief:

> **GROUND ONE:**     The trial court erred in denying defendant-appellant fast and speedy trial rights in violation of the Ohio [sic] and Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.[60]
>
> **GROUND TWO:**     The trial court denied defendant-appellants right to a fair trial and due process of law by admitting evidence of prior bad acts which was improper under Evid. R.404(B) and prejudicial under Evid. R. 403(B) in violation of petitioner's Fifth, Sixth, and Fourteenth Amendment rights to the United States Constitution.[61]
>
> **GROUND THREE:**     Defendant-appellant's right to attorney-client privilege was violated requiring appointment of new counsel in violation of the Sixth Amendment to the United States Constitution.[62]

## Analysis

**A.     Preliminary observations**

Before proceeding further, I make the following preliminary observations:

---

[58] The present petition for federal habeas relief was filed on September 16, 2016. ECF # 1. As such, it was filed within one year of the conclusion of Machuca's direct appeal in the Ohio courts and so is timely under 28 U.S.C. § 2254(d)(1).

[59] ECF # 1.

[60] *Id*. at 17.

[61] *Id*.

[62] *Id*.

1.      There is no dispute that Machuca is currently in state custody as the result of his conviction and sentence by an Ohio court, and that he was so incarcerated at the time he filed this petition. Thus, he meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[63]

2.      There is also no dispute, as detailed above, that this petition was timely filed under the applicable statute.[64]

3.      In addition, Machuca states,[65] and my own review of the docket of this Court confirms, that this is not a second or successive petition for federal habeas relief as to this conviction and sentence.[66]

4.      Moreover, subject to the arguments raised by the State, it appears that these claims have been totally exhausted in Ohio courts by virtue of having been presented through one full round of Ohio's established appellate review procedure.[67]

5.      Finally, Machuca is not represented by counsel, he has not requested the appointment of counsel,[68] nor has he requested an evidentiary hearing to develop the factual bases of his claims.[69]

---

[63] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[64] 28 U.S.C. § 2254(d)(1);  *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

[65] *See*, ECF # 1 at 12.

[66] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

[67] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[68] 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing 2254 Cases.

[69] 28 U.S.C. § 2254(e)(2).

-10-

**B.     Standards of review**

*1.     AEDPA review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[70] codified

at 28 U.S.C. § 2254, strictly circumscribes a federal court's ability to grant a writ of habeas

corpus.[71]  Pursuant to AEDPA, a federal court shall not grant a habeas petition with respect

to any claim adjudicated on the merits in state court unless the state adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established [f]ederal law, as determined by the Supreme
> Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the [s]tate court proceeding.[72]

The Supreme Court teaches that this standard for review is indeed both "highly deferential"

to state court determinations,[73] and  "difficult to meet,"[74] thus, preventing petitioner and

federal court alike "from using federal habeas corpus review as a vehicle to second-guess the

reasonable decisions of state courts."[75]

---

[70] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

[71] *See* 28 U.S.C. § 2254 (2012).

[72] 28 U.S.C. § 2254(d) (2012).

[73] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).

[74] *Id.* (citation omitted).

[75] *Rencio v. Lett*, 559 U.S. 766, 779 (2010).

a.  *"Contrary to" or "unreasonable application of" clearly established federal law*

Under § 2254(d)(1), "clearly established Federal law" includes only Supreme Court holdings and does not include dicta.[76]  In this context, there are two ways that a state court decision can be "contrary to" clearly established federal law:[77] (1) in circumstances where the state court applies a rule that contradicts the governing law set forth in a Supreme Court case,[78] or (2) where the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision, but nonetheless arrives at a different result.[79]  A state court's decision does not rise to the level of being "contrary to" clearly established federal law simply because that court did not cite the Supreme Court.[80]  The state court need not even be aware of the relevant Supreme Court precedent, so long as neither its reasoning nor its result contradicts it.[81]  Under the "contrary to" clause, if materially indistinguishable facts confront the state court, and it nevertheless decides the case differently than the Supreme Court has previously, a writ will issue.[82]  When no such Supreme Court holding exists the federal habeas court must deny the petition.

---

[76] *Howes v. Fields*, 132 S.Ct. 1181, 1187 (2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[77]  *Brumfield v. Cain*, 135 S.Ct. 2269, 2293 (2015).

[78]  *Id.*

[79]  *Id.*

[80]  *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam).

[81]  *Id.*

[82]  *See id.*

-12-

A state court decision constitutes an "unreasonable application" of clearly established federal law when it correctly identifies the governing legal rule, but applies it unreasonably to the facts of the petitioner's case.[83]  Whether the state court unreasonably applied the governing legal principle from a Supreme Court decision turns on whether the state court's application was objectively unreasonable.[84]  A state court's application that is "merely wrong," even in the case of clear error, is insufficient.[85]  To show that a state court decision is an unreasonable application, a petitioner must show that the state court ruling on the claim being presented to the federal court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[86]  Under the "unreasonable application" clause, the federal habeas court must grant the writ if the State court adopted the correct governing legal principle from a Supreme Court decision, but unreasonably applied that principle to the facts of the petitioner's case.

b.    *"Unreasonable determination" of the facts*

The Supreme Court has recognized that § 2254(d)(2) demands that a federal habeas court accord the state trial courts substantial deference:[87]  Under § 2254(e)(1), "a

---

[83]  *White v. Woodall*, 134 S.Ct. 1697, 1699 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000).

[84]  *Id.*(quoting *Lockyear v. Andrade*, 538 U.S. 63, 75-76. (2003).

[85]  *Id.*

[86]  *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

[87]  *Brumfield*, 135 S.Ct. at 2277.

determination of a factual issue made by a [s]tate court shall be presumed to be correct."[88] A federal court may not characterize a state court factual determination as unreasonable "merely because [it] would have reached a different conclusion in the first instance."[89] While such deference to state court determinations does not amount to an "abandonment or abdication of judicial review" or "by definition preclude relief,"[90] it is indeed a difficult standard to meet. "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determination made on the scene by the trial judges."[91]

## 2.   *Speedy Trial Act*

The Sixth Amendment to the United States Constitution guarantees the accused a speedy trial in all criminal prosecutions. The right to a speedy trial is "fundamental," and is imposed on the states by the Due Process Clause of the Fourteenth Amendment.[92] The Supreme Court has held that the states "are free to prescribe a reasonable period consistent

---

[88] 28 U.S.C. § 2254(e)(1) (2012).

[89] *Brumfield*, 135 S.Ct. at 2277 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010).

[90] *Id.* (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination.") (internal quotation marks omitted)).

[91] *Davis v. Ayala*, 135 S.Ct. 2187, 2202 (2015) (citation omitted).

[92] *Barker v. Wingo*, 407 U.S. 514, 515 (1972); *Klopfer v. North Carolina*, 386 U.S. 213 (1967).

-14-

with constitutional standards."[93] The *Barker* Court provided four criteria to judge an alleged violation of the constitutional right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant.[94] None of the four factors is either necessary or sufficient to finding a deprivation of the right to a speedy trial, but must be balanced with other relevant circumstances.[95]

Prejudice, the most important consideration, is assessed in light of three interests to the defendant: (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired.[96] The Supreme Court has described the balance as "whether [the] delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result."[97]  Moreover, the length of the delay is a threshold requirement; if the delay is not "uncommonly long," then judicial examination ends.[98]

---

[93]  *Id*. at 523.

[94]  *Id*. at 530; *Norris v. Schotten*, 146 F.3d 314, 326 (6th Cir.), cert. denied 514 U.S. 935 (1998).

[95]  *Green v. Clipper*, N.D. Ohio No. 5:13-CV-2029, 2015 WL 3505001 (June 3, 2015), *13, citing *Barker*, 407 U.S. at 533.

[96]  *Id*.

[97]  *Doggett v. United States*, 505 U.S. 647, 651 (1992).

[98]  *Maples v. Stegall*, 427 F.3d 1020, 1025-26 (6th Cir. 2005), citing *Doggett*, 505 U.S. at 652.

3.       *Federal Rule of Evidence 404(b)-prior bad acts*

Federal Rule of Evidence 404(b), codifies the common-law rule that evidence of a

defendant's prior bad acts is inadmissible to demonstrate a defendant's propensity to commit

criminal acts, but may be admissible for other limited purposes. Federal Rule of Evidence

404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of
> a person in order to show action in conformity therewith. It may, however, be
> admissible for other purposes, such as proof of motive, opportunity, intent,
> preparation, plan, knowledge, identity, or absence of mistake or accident.

The Sixth Circuit Court of Appeals has stated, "Federal habeas courts review state

court evidentiary decisions only for consistency with due process."[99] Also, the Sixth Circuit

has determined that only where the evidentiary ruling is so egregious that it results in a denial

of fundamental fairness will it rise to a due process violation subject to habeas relief.[100]

Deference should be accorded state court determinations of whether due process was denied

by trial court errors.[101]

---

[99]  *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001), citing *Patterson v. New York*, 432 U.S. 197 (1977).

[100]  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), citing *Coleman v. Mitchell*, 244 F.3d 533 at 542, and *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *also see Dowling v. United States*, 493 U.S. 342, 352 (1990); *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990); *Walker v. Engle*, 703 F.2d 959 (6th Cir.), cert. denied, 464 U.S. 962 (1983); *Maglaya v. Buchkoe*, 515 F.2d 265 (6th Cir.), cert. denied, 423 U.S. 931 (1975).

[101]  *Lundy v. Campbell,* 888 F.2d 467, 469-70 (6th Cir. 1989), cert. denied, 495 U.S. 950 (1990).

-16-

### 4.      *Counsel of choice*

The Sixth Circuit has stated that a motion for a new court-appointed attorney based on a defendant's dissatisfaction with existing counsel is "addressed to the sound discretion of the trial court."[102]  The reviewing court must keep in mind that "the right to counsel of choice, unlike the right to counsel ... is not absolute.  An indigent defendant has no right to have a particular counsel represent him," and so a defendant's right to court-appointed counsel "does not carry with it the right to select a particular attorney."[103]  Indeed, the Sixth Circuit has emphasized that while the Sixth Amendment guarantees a defendant the effective assistance of counsel, "[t]his right has not been extended to allow an indigent defendant the counsel of his choice."[104]  In 2006 the United States Supreme Court also recognized that "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."[105]

Because an indigent defendant has no absolute right to select the particular attorney who will represent him, to obtain a substitution of appointed counsel a defendant must show good cause for the substitution.[106]  Courts have determined that the trial court must make some sort of inquiry into a defendant's complaints if there has been a motion to substitute

---

[102] *U.S. v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004); *Williams v. Bunting*, 2015 WL 1505699, at *3 (N.D. Ohio April 1, 2015)(citing *Trujillo*, 376 F.3d at 606).

[103] *U.S. v. Ilses*, 906 F.2d 1122, 1130-1131 (6th Cir. 1990)(internal citations omitted);

[104] *Tolliver v. Dallman,* 57 F.3d 1070, *2 (6th Cir. 1995)(citing *Ilses*).

[105] *U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 151 (2006).

[106] *Tolliver*, 57 F.3d at *2.

counsel.[107]  That said, however, courts have also determined that the Sixth Amendment does not guarantee a defendant a "meaningful relationship" with his attorney.[108]  Therefore, as noted above, a decision as to whether to appoint new counsel at a defendant's request is committed to the sound discretion of the trial court.[109]

With that in mind, a court considering a request for substitution of counsel should consider: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.[110] Further, consideration of such a motion requires a balancing of the accused's right to counsel of his choice and public's interest in the prompt administration of justice.[111]

## 5.    *Ineffective assistance of counsel*

In *Higgins v. Renico*,[112] the Sixth Circuit re-stated the foundational rubric for reviewing claims of ineffective assistance of counsel pursuant to the long-standing teaching of *Strickland v. Washington*:[113]

---

[107] *Id.*

[108] *Williams,* 2015 WL 1505699, at *12 (internal citation and quotation omitted).

[109] *Id.* (citation omitted).

[110] *Trujillo*, 378 F.3d at 606 (citation omitted).

[111] *Williams*, 2015 WL 1505699, at *12 (citations omitted).

[112] *Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006).

[113] *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*, a defendant must establish both that his counsel's performance was seriously deficient and also that he suffered prejudice as a result of such deficiency.[114]

The *Higgins* court then proceeded to discuss the applicable standards for evaluating each prong of the *Strickland* test. It explained seriously deficient performance in the following terms:

> When complaining of his counsel's deficient performance, a convicted defendant must show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms." A reviewing court must judge the reasonableness of counsel's actions on the facts of the defendant's case, viewed from counsel's perspective at the time, recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." In essence, a defendant has the burden of proving by a preponderance of the evidence, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

> "Because advocacy is an art not a science, ... [counsel's] strategic choices must be respected" if they were made after a thorough investigation of the law and facts relevant to possible options." Such choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference. Indeed, such strategic choices are virtually unchallengeable. As explained by the Supreme Court:

> > Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct,

---

[114] *Higgins*, 470 F.3d at 631.

and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Thus, counsel cannot be adjudged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy."[115]

The clearly established federal law of establishing prejudice from deficient performance of counsel was stated by the *Higgins* court as follows:

Even where counsel's performance is deficient, a petitioner is not entitled to habeas relief unless he also demonstrates ensuing prejudice. In evaluating the prejudice suffered by a defendant as a result of his counsel's deficient performance, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings." Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Although the defendant need not prove that counsel's deficient conduct more likely than not affected the verdict, the defendant must show that "absent his counsel's error, the courts of appeal would have reasonable doubt with respect to his guilt." "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." In this vein, the court must determine whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."

Whether an error actually prejudiced a defendant is weighed against the "totality of the evidence before the judge or jury." A verdict "only weakly

---

[115] *Id.* at 631-32 (internal citations omitted).

supported by the record is more likely to have been affected by errors than one with overwhelming record support."[116]

Moreover, it is well-settled that a federal habeas court may, as an initial inquiry, consider either the alleged deficiency itself or the claim of prejudice resulting from such deficiency since establishing both prongs is required to grant the writ.[117]

## C.     Application of standards

As noted, Machuca raises three grounds for relief.  Each ground will here be addressed *seriatum*.

### 1.     *Speedy trial*

Machuca argues that his constitutional right to a speedy trial was violated when the trial court granted defense counsel's motion for a continuance so that he could adequately prepare for trial.   Initially, it is important to note that defense counsel was appointed only 11 days before Machuca's trial was scheduled to begin.[118]  The newly appointed counsel thereupon moved for a continuance on the grounds that "he was just recently appointed to represent the defendant and he needed more time to prepare for trial."[119]  Machuca did not

---

[116] *Id.* at 633-34 (internal citations and parenthetical comments omitted).

[117] *Id.* at 631 n.3.

[118] See ECF # 10, Attachment at 7 (appointing counsel on May 16, 2014), 8 (motion for continuance noting that trial was scheduled to begin May 27, 2014).

[119] *Id.* at 8.

consent to a continuance and refused to waive his speedy trial rights; such rights provided that the speedy trial time limits expired on May 27, 2014.[120]

In granting the motion for a continuance, the trial court initially found, under Ohio law, that defense counsel may waive speedy trial rights on behalf of a defendant without the consent of the defendant for reasons of trial preparation.[121]   The trial court then determined, under the test set out by the United States Supreme Court in *Barker v. Wingo*,[122] that under the totality of the circumstances a continuance of two weeks from the scheduled trial date - or three and a half months from the date of arrest - would not be presumptively prejudicial, was not due to any delay caused by the state and was reasonable.[123]   The court then specifically found that although Machuca was anxious and concerned about the continuance, "there is [under the circumstances of a newly appointed counsel] a very real possibility that the defense will be impaired if a brief continuance is not granted."[124]

---

[120] *Id.*

[121] *Id.* at 9-11. Machuca attempts to argue in his traverse that this decision by the trial court must now be questioned because it was based on an Ohio Supreme Court decision that was in turn based on a California Supreme Court decision that was later overturned. ECF# 13 at 8-9. Whatever academic interest this fact may engender, the case cited by the appeals court here remains valid law in Ohio, and a federal habeas court must accept a state court's determination of the law in its own state. Indeed, the Ohio Supreme Court in *State v. Taylor*, 98 Ohio St.3d 27 (2013) - a decision rendered well after the 1980 California case cited by Machuca - found on very similar facts to the present case that a defendant is bound by counsel's speedy trial waiver even though that waiver was tendered without the defendant's consent.

[122] *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

[123] ECF # 10, Attachment at 11-14.

[124] *Id.* at 14.

In addressing this claim on appeal, the Ohio appeals court cited appropriate state and federal law and concluded that Machuca's speedy trial rights were not violated:

{¶31} The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to a speedy trial by the state. *Klopfer v. North Carolina*, 386 U.S. 213, 222-223, 87 S.Ct. 988, 18 L.Ed.2d 168 (1967). Article I, Section 10 of the Ohio Constitution and R.C. 2945.71 also provide an accused a speedy trial guarantee. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55 (1996); *State v. Ladd* , 56 Ohio St.2d 197, 200 (1978).

{¶32} When a criminal defendant claims a violation of his Sixth Amendment right to a speedy trial, courts apply a "balancing test in which the conduct of both the prosecution and the defendant are weighed." *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In *Barker*, the United States Supreme Court identified the following factors to assess in evaluating speedy-trial violations: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Id.*

{¶33} The first factor, the length of the delay, is a "triggering mechanism." *Id.* "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors." *Id.* "[I]n this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry." *Doggett v. United States*, 505 U.S. 647, 652, fn. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). "Courts have generally found post accusation delay 'presumptively prejudicial' at least as it approaches one year." *Id.* ; *State v. Miller*, 10th Dist. Franklin No.  04AP-285, 2005-0hio-5 1 8, 12.

{¶34} Here, Appellant was arrested on February 26, 2014, and his trial commenced on October 14, 2014. This seven and one-half month period between Appellant's arrest and trial is not "presumptively prejudicial" within the meaning of the Sixth Amendment, and therefore, the *Barker* enquiry is not triggered. Thus, Appellant's Sixth Amendment right to a speedy trial was not violated.

{¶35} Appellant also asks this court to reexamine the Ohio Supreme Court's finding that "a defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial

preparation and the defendant is bound by the waiver even though the waiver is executed without his consent." *McBreen*, 54 Ohio St.2d at 320.

{36} Appellant argues that *McBreen* conflicts with a lawyer's ethical duties under the Rules of Professional Conduct insofar as "a lawyer shall abide by a client's decisions concerning the objectives of representation." Prof.Cond.R. 1.2(a). In a criminal case, these objectives include: the client's decision as to a plea to be entered, whether to waive a jury trial, and whether the client will testify; the rule does not expressly require a lawyer to abide by a criminal defendant's decision concerning what pre-trial motions are filed. Prof.Cond.R. 1.2(a). Rather, Prof.Cond.R. 1 .4(a)(2) requires a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished. To that end, any argument relating to whether Pitts reasonably consulted with Appellant within the meaning of Prof.Cond.R. 1 .4(a)(2) is outside this court's jurisdiction, as Article IV, Section 2(B)(l)(g) of the Ohio Constitution grants the Ohio Supreme Court with original jurisdiction in these matters.[125]

The Ohio court concluded, pursuant to federal constitutional law, that the *Barker* balancing test was not at issue in this case because only seven and one-half months had elapsed between arrest and trial. The court then subsequently analyzed and rejected the state law claims that defense counsel could not waive speedy trial time limits on behalf of a non-consenting defendant for a good reason, and that defense counsel here had violated Ohio's Rules of Professional Conduct.

To the extent that the present claim for relief is solely viewed as a claimed violation of clearly established federal law, the Ohio appellate court's decision here is not an unreasonable application of *Barker*. Accordingly, I recommend that the federal claim here be denied. Insofar as the claim here involves questions of state law, I recommend that those portions of the claim be dismissed as non-cognizable.

---

[125] *Id*. at 132-134.

## 2.      *Admission of bad acts evidence*

In his second ground for relief Machuca maintains that the trial court denied him his federal constitutional rights to due process and a fair trial by admitting evidence of prior bad acts.

Specifically, he contends that the trial court's admission of prior acts of domestic violence not charged in the indictment was prejudicial and unfairly confused the jury while appealing to their instincts to punish the defendant with appeals to their emotions.[126]

As noted above, federal courts review state trial court decisions concerning the admission of evidence only for consistency with due process.[127]  In that regard, the Sixth Circuit teaches that only when the evidentiary ruling is so egregious that it results in a denial of fundamental fairness will the ruling be considered a denial of due process subject to habeas relief.[128]  To that end, the Sixth Circuit also teaches that the category of infractions that violate fundamental fairness is defined "very narrowly,"[129] and so encompasses only those rulings that "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental."[130]

---

[126] ECF # 1 at 24.

[127] *Coleman v. Mitchell,* 268 F.3d 417, 439 (6th Cir. 2001)(citation omitted).

[128] *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)(citation omitted).

[129] *Id*. (citation omitted).

[130] *Id*. (citation omitted).

Here, the appeals court initially observed that Machuca acknowledged that evidence of prior convictions for domestic violence was properly admitted as establishing an element of the crime for which he was indicted, but challenged the admission of that same evidence as proof of intent in the present matter.[131]  The court then observed that evidence of other crimes or wrongs is admissible to show intent upon satisfying a three part test: (1) are the prior acts relevant to making any necessary fact more or less probable that it would be without the evidence; (2) is the prior acts evidence submitted to impermissibly show that the accused acted in conformity with past conduct; and (3) does the probative value of the prior acts evidence substantially outweigh the danger of unfair prejudice.[132]  The court further noted that the use of prior acts evidence is to be conservatively applied by trial courts, but that the matter is committed to their sound discretion.[133] Finally, the court observed that under Ohio law prior bad acts by the defendant against the same victim are admissible to prove intent in cases involving domestic violence.[134]

With that background, the appellate court found as follows:

{¶43} Here, Appellant was indicted on one count of burglary in violation of R.C. 2911.12(A)(l), which provides that "[n]o person, by force, stealth, or deception, shall * * * trespass in an occupied structure * * * with purpose to commit in the structure * * * any criminal offense." At trial, the State was required to prove, beyond a reasonable doubt, that Appellant entered

---

[131] ECF # 10, Attachment at 134.

[132] *Id*. at 135.

[133] *Id*. at 136.

[134] *Id*.

Hurley's home with the purpose to commit in the home a criminal offense; according to the State, Appellant entered Hurley's home with the purpose to commit domestic violence.

{¶44} Tracie testified that prior to her attack in Hurley's home, she took affirmative steps to avoid contact with Appellant. These steps included: moving out of their marital home, taking alternative routes to and from work, altering her cell phone's GPS, and moving across state lines. Despite her efforts, Tracie testified that Appellant followed her and repeatedly initiated violent contact (i.e., the highway incident, the workplace incident, the stoplight incident). Although Appellant denied trying to harm Tracie, he admitted that his repeated efforts stemmed from his desire to help Tracie overcome her alleged drug addiction.

{¶45} Given that these prior acts occurred less than one year from the current incident, involved the same victim, and concerned the same subject matter, we cannot find that the trial court abused its discretion in admitting this evidence to establish Appellant's intent pursuant to Evid.R. 404(B). See *State v. McCoy*, 9th Dist. Summit No. 22373, 2005-0hio-4262, 12.[135]

On that record, I recommend finding that the Ohio appellate court's decision in this instance was not an unreasonable application of clearly established federal law. The decision of the trial court to admit the prior act evidence to show intent was in conformity with Ohio law and did not violate some fundamental principle of fairness. As such, the ground for relief should be denied as without merit. To the extent that the current ground for relief argues more, it should be dismissed as a non-cognizable state law claim.

## 3.    *Attorney-client privilege*

Machuca raises three issues in connection with this claim for relief. First, he argues that the trial court erred by not replacing his second appointed attorney when a conflict arose over a motion to continue. Second, he claims that his trial counsel willfully failed to protect

---

[135] *Id.* at 137-38.

his right to a speedy trial, in that he knew that retaining the original trial date was a "condition precedent" to Machuca accepting counsel's appointment.  Third, he contends that counsel's decisions to move forward with the motion for continuance over Machuca's objection, and to "suppress" the fact that such a continuance was in violation of an agreement they reached prior to Machuca accepting counsel's appointment was unprofessional.

In addressing the first argument concerning an alleged error by the trial court in not acceding to Machuca's request to replace his second appointed counsel with a third appointed counsel, the Ohio appeals court began by noting that substitution of counsel is within the discretion of the trial court.[136]  The court further observed that while the Sixth Amendment guarantees an indigent defendant competent counsel, that right does not extend to the right to have counsel of one's personal choice, nor to a meaningful and peaceful attorney-client relationship.[137]

Instead, an indigent defendant may discharge a court-appointed counsel only upon a showing of good cause, such as a conflict of interest, a complete breakdown in the attorney-client relationship or an irreconcilable conflict which leads to an apparently unjust result.[138]

The Ohio court then concluded:

> {50} Here, there was a breakdown. in communication between
> Appellant and Pitts, as evidenced by Appellant's letter to the

---

[136] *Id*. at 138.

[137] *Id*. (citations omitted)

[138] *Id*. at 139 (citing *State v. Blakenship*, 102 Ohio App.3d 534, 558 (12th Dist. 1995)(citing *Morris v. Slappy* 461 U.S. 1, 13 (1983)).

> trial court his statement at the July 1, 2014 hearing, and his
> unsuccessful attempt to fire Pitts. However, we cannot find that
> the trial court's refusal to appoint new counsel was
> unreasonable, arbitrary, or unconscionable in light of the fact
> that Appellant's complaints stemmed from his erroneous belief
> that Pitts had violated his right to a speedy trial. Likewise,
> nothing in the record indicates that Pitts's representation was
> deficient or that Appellant was prejudiced in any way by the
> trial court's refusal to appoint new counsel.[139]

On review of the adjudication of this issue, the Ohio appeals properly located and

cited the clearly established federal law applicable here. Further, the Ohio appeals court

applied that law to the facts here to find that the trial court had not abused its discretion in

denying Machuca's request to remove his second court-appointed attorney for the reasons

he gave.   Accordingly, I recommend that this portion of the third ground for habeas relief

be denied on the merits after AEDPA review.

As concerns the second element of this ground - alleging that trial counsel was

ineffective for not preserving Machuca's speedy trial rights and by filing motions that

Machuca did not endorse - the Ohio appeals court did not expressly consider this argument

in light of the well-established rubric of *Strickland v. Washington*.[140]  That said, the appeals

court did expressly note that "nothing in the record indicates that [counsel's] representation

was deficient or that [Machuca] was prejudiced in any way by the trial court's refusal to

appoint new counsel."[141]

---

[139] *Id*.

[140] *Strickland v. Washington*, 466 U.S. 668 (1984).

[141] ECF # 10, Attachment at 139.

Here, Machuca has offered no basis by which to conclude that there would have been a different result in this case, particularly when counsel was faced with conducting a trial scheduled for just 11 days from his appointment.  Essentially, while Machuca has insisted at some length in arguing that he was misled by counsel or that counsel failed in some ethical duty to do exactly as Machuca wished in every respect, he has not shown how moving forward with trial at the scheduled date with admittedly unprepared counsel would have somehow increased the likelihood of a favorable result.

In sum, and on this record, I recommend finding that the decision of the Ohio appeals court in this regard was not contrary to the clearly established federal law of *Strickland*, and so that this ground for relief should be denied on the merits.

## Conclusion

For the reasons stated, I recommend that the *pro se* habeas petition of Orlando Machuca be dismissed in part and denied in part as is more fully set forth above.

Dated: February 28, 2018                          s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[142]

---

[142] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-30-